**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------
SHIVA STEIN,                                         :
                                                     :
               Plaintiff,                            :   Civil Action No. 1:21-cv-4289
                                                     :
v.                                                   :
                                                     :   COMPLAINT FOR VIOLATIONS OF
ORBCOMM INC., JEROME B.                              :   SECTIONS 14(a) AND 20(a) OF THE
EISENBERG, MARC J. EISENBERG,                        :   SECURITIES EXCHANGE ACT OF
MARCO FUCHS, DENISE GIBSON,                          :   1934
KAREN GOULD, TIMOTHY KELLEHER,                       :
and JOHN MAJOR,                                      :   JURY TRIAL DEMANDED
                                                     :
               Defendants.                           :
--------------------------------------------------------  :
```

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.       This is an action brought by Plaintiff against ORBCOMM Inc. ("ORBCOMM or the "Company") and the members ORBCOMM board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of ORBCOMM by GI Partners ("GI Partners") and its affiliates.

2.       Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on May 10, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby GI DI Orion Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of GI DI Orion Acquisition Inc., an affiliate of GI Partners ("Parent"), will merge with and into ORBCOMM with ORBCOMM surviving the merger and becoming a wholly owned subsidiary of Parent (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each ORBCOMM common share issued and outstanding will be converted into the right to receive $11.50 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked ORBCOMM stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, PJT Partners LP ("PJT") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to ORBCOMM stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because ORBCOMM's proxy solicitor, Morrow Sodali LLC, financial advisor, PJT, and legal advisor, Milbank LLP, are all headquartered in this District. Moreover, GI Partners maintains an office in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of ORBCOMM common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Jerome B. Eisenberg has served as a member of the Board since 2001.

11.     Individual Defendant Marc J. Eisenberg has served as a member of the Board since 2002 and is the Company's Chief Executive Officer.

12.     Individual Defendant Marco Fuchs has served as a member of the Board since 2001.

13.     Individual Defendant Denise Gibson has served as a member of the Board since October 2018.

14.     Individual Defendant Karen Gould has served as a member of the Board since June 2018.

15.     Individual Defendant Timothy Kelleher has served as a member of the Board since March 2008.

16.     Individual Defendant John Major has served as a member of the Board since April 2007.

17.     Defendant ORBCOMM is incorporated in Delaware and maintains its principal offices at 395 W. Passaic Street, Rochelle Park, New Jersey 07662.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "ORBC."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

20.     ORBCOMM provides Internet of Things solutions in the United States, South America, Japan, Europe, and internationally. The Company offers network connectivity, devices, device management, and web reporting applications that are designed to track, monitor, control, and enhance security for various assets, such as trailers, trucks, rail cars, sea containers, power generators, fluid tanks, marine vessels, diesel or electric powered generators, oil and gas wells, pipeline monitoring equipment, irrigation control systems, and utility meters in transportation and supply chain, heavy equipment, fixed asset monitoring, and maritime industries, as well as for governments. It also provides satellite automatic identification service data services to assist in vessel navigation and to enhance maritime safety for government and commercial customers; and

vehicle fleet management, as well as in-cab and fleet vehicle solutions using various network platforms, including its own constellation of low-earth orbit satellites and accompanying ground infrastructure, as well as terrestrial-based cellular communication services through reseller agreements with various cellular wireless providers. In addition, the Company offers customer solutions utilizing additional satellite network service options through service agreements with third party mobile satellite providers; and resells service using the two-way Inmarsat plc satellite network to provide higher bandwidth. It markets and sells its products and services directly to original equipment manufacturers, government customers, and end-users, as well as indirectly through market channel partners and affiliates. ORBCOMM was founded in 1993 and is headquartered in Rochelle Park, New Jersey.

21.    On April 8, 2021, ORBCOMM announced that they had entered into a proposed transaction:

ROCHELLE PARK, N.J., April 08, 2021 (GLOBE NEWSWIRE) -- ORBCOMM Inc. (Nasdaq: ORBC), a global provider of Internet of Things (IoT) solutions, today announced that it has entered into a definitive agreement to be acquired by GI Partners, a leading US-based investor in data infrastructure businesses, in an all-cash transaction that values ORBCOMM at approximately $1.1 billion, including net debt.

Under the terms of the agreement, ORBCOMM stockholders will receive $11.50 in cash per outstanding share of common stock upon closing of the transaction, representing a premium of approximately 52% to ORBCOMM's closing share price on April 7th and a 50% premium over the 90-day volume-weighted average share price through that date.

The investment by GI Partners will support ORBCOMM's strong momentum in the industrial IoT as it increases its investment in sales, marketing and technology innovation to accelerate growth, execute on its long-term strategic plan and global market expansion, and provide added flexibility as a privately-held company.

"This transaction will provide immediate and substantial value to ORBCOMM stockholders, reflecting the tremendous commitment and work of our employees and stakeholders. The partnership with GI Partners will provide us the opportunity to rapidly advance our long-term strategy," said Marc Eisenberg, ORBCOMM's

Chief Executive Officer. "GI Partners has an established track record of working with companies to accelerate growth, and we look forward to continuing to drive innovation, providing world-class service to our global customers and expanding our market share in the industrial IoT as a privately held company."

"ORBCOMM has a long history of innovation, providing mission-critical services to customers across the global logistics landscape and a broad range of other industries," said Mark Prybutok, Managing Director of GI Partners. "We are excited to work with the ORBCOMM team to take the business forward as IoT use cases continue to evolve and grow."

ORBCOMM's Board of Directors has unanimously approved the transaction and recommends that ORBCOMM's stockholders vote in favor of the transaction at the special meeting of ORBCOMM stockholders to be called in connection with the transaction. A special meeting of ORBCOMM's stockholders will be held as soon as practicable following the filing of a definitive proxy statement with the U.S. Securities and Exchange Commission (SEC) and subsequent mailing to its stockholders.

**Transaction Details**

The transaction is expected to close following the satisfaction of customary closing conditions, including approval by ORBCOMM stockholders and the receipt of required regulatory approvals.

Consistent with the Board's commitment to maximizing stockholder value, under the terms of the definitive merger agreement, ORBCOMM and its representatives may actively solicit and consider alternative acquisition proposals during a 30-day "go-shop" period that will expire on May 7, 2021. ORBCOMM has the right to terminate the definitive merger agreement with GI Partners to enter into a superior proposal subject to certain terms and conditions of the definitive merger agreement. There can be no assurance that this process will result in a superior proposal, and ORBCOMM does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or is otherwise required.

The parties expect the transaction to close in the second half of 2021. Subject to and upon completion of the transaction, ORBCOMM will become a privately-held company and its common stock will no longer be listed on the Nasdaq Stock Market.

PJT Partners and Raymond James are acting as financial advisors to ORBCOMM, and Milbank LLP is acting as legal counsel. Evercore is acting as financial advisor to GI Partners, and Simpson Thacher & Bartlett LLP and Morgan, Lewis & Bockius LLP are acting as legal counsel.

22.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that ORBCOMM's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

23.     On May 10, 2021, ORBCOMM filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning ORBCOMM Financial Projections*

24.     The Proxy Statement fails to provide material information concerning financial projections by ORBCOMM management and relied upon by PJT in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that ORBCOMM management provided to the

Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25.    For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA (Pre-SBC), Adjusted EBITDA (Post-SBC), and Levered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26.    When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27.    The SEC has noted that:

> companies should be aware that this measure does not have a
> uniform definition and its title does not describe how it is calculated.
> Accordingly, a clear description of how this measure is calculated,
> as well as the necessary reconciliation, should accompany the
> measure where it is used. Companies should also avoid
> inappropriate or potentially misleading inferences about its
> usefulness. For example, "free cash flow" should not be used in a
> manner that inappropriately implies that the measure represents the

8

residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning PJT's Financial Analysis*

29.     With respect to PJT's *Selected Precedent M&A Transactions Analysis* for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by PJT in the analysis.

30.     With respect to PJT's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the projected terminal values for the Company; (ii) the Company's unlevered free cash flows for the period from March 31, 2021 through December 31, 2030; (iii) the inputs and assumptions underlying the use of perpetuity growth rates of 2.5% to 4.5%; (iv) the inputs and assumptions underlying the range of discount rates ranging from 9.0% to 10.0%, (v) the Company's weighted average cost of capital.

31.     The Proxy Statement fails to disclose the reason why PJT did not conduct a selected companies analysis, which is crucial to determine how public markets might value the target company and for the financial advisor to determine an appropriate valuation multiple for the company.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

32.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

33.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

35.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by PJT and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

36.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

37.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

38.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## <u>COUNT II</u>

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     The Individual Defendants acted as controlling persons of ORBCOMM within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of ORBCOMM, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of ORBCOMM, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of ORBCOMM, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

43.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger

Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 12, 2021                               **MELWANI & CHAN LLP**

                                        By:   /s *Gloria Kui Melwani*
                                                Gloria Kui Melwani (GM5661)
                                                1180 Avenue of the Americas, 8th Fl.
                                                New York, NY 10036
                                                Telephone: (212) 382-4620
                                                Email: gloria@melwanichan.com

                                                *Attorneys for Plaintiff*